### FORTUNE *v.* SMITH and others.

(*Circuit Court, D. Nebraska.* August 19, 1886.)

ATTACHMENT—PRIORITY—ABSCONDING DEBTOR—AGENT.

Where a firm agreed with an agent to apply the first moneys collected from the property of an absconding debtor in payment of a joint note from the agent and said debtor, who had been in partnership, in consideration of releasing the agent from any partnership liability, while he agreed to allow the firm to make their claims against the debtor prior and superior to his own, *held,* that the agent thereby granted to the firm priority of lien on property attached by him for their benefit, although he had himself a good equitable lien on the same property, previously given to secure him for money he had put into the partnership.

In Equity.

*Whitny S. Clark,* for complainant.

*W. H. Munger,* for defendants.

BREWER, J. This is a bill to correct a mistake in a deed and to remove a cloud from the title. The facts are these: In January, 1885, one John Y. Smith was in business in Nebraska and Iowa buying grain and shipping to Chicago. Rumsey & Buell were commission merchants in Chicago to whom he made his shipments, and

who were in the habit of making time advances on grain purchased and to be purchased. M. Fortune, the complainant in this case, was a traveling agent of Rumsey & Buell, looking after their interests in Iowa and Nebraska. On January 16, 1885, he formed a full partnership with Smith, putting into the concern $5,800 in cash, the property of his wife, $2,200 in notes belonging to himself, and $5,000 borrowed from Rumsey & Buell on a note signed by himself, his wife, and Smith. The name of the concern was unchanged, though he became a full partner. The business of the partnership was managed entirely by Smith; Fortune continuing to act as an agent of Rumsey & Buell. On April 17, 1885, Smith executed and forwarded a deed to Fortune. Smith intended by this deed to convey what is known as the opera-house property in North Bend, Nebraska, but by mistake other property was described. It was intended to secure Fortune for the money he had put into the partnership. Though in form a deed, with an expressed consideration of $5,000, it was not intended as a payment of so much money, but merely as security. Immediately after forwarding this deed to Fortune, Smith absconded, owing Rumsey & Buell $22,000. As soon as he had received the deed, Fortune came to Nebraska, and finding that Smith had absconded, placed for Rumsey & Buell an attachment on all of Smith's property, including therein this opera-house. A few days after, Rumsey came out from Chicago, and he and Fortune executed the following agreement:

"Articles of agreement made and entered into this fifth day of May, 1885, by and between Rumsey & Buell, of the first part, and M. Fortune and Ada A. Fortune, of the second part, witnesseth, that whereas, one John Y. Smith is indebted to both of said parties and has absconded; and whereas, said first parties hold a joint note for $5,000, signed by John Y. Smith, M. Fortune, and Ada A. Fortune, dated January 3, 1885, and both parties herewith have cause for attachment against the said John Y. Smith; and whereas, said first party is about to commence suit by attachment against him,—it is agreed and understood that the parties of the first part will apply the first money they may receive from sale of corn, for which they hold John Y. Smith's crib receipts, or which they may realize or collect in attachment proceedings against him from other property in Iowa or Nebraska in payment of said joint note above described, and signed by said Smith and M. Fortune and Ada A. Fortune as aforesaid.

"It is also agreed that said M. Fortune is released from any and all liability to said first parties on account of his relations in business or associations with said John Y. Smith as a partner or otherwise, and in consideration thereof said M. Fortune will use his best endeavors to assist said first parties in collecting from said Smith what he, Smith, owes them, in discovering property belonging to him in Iowa, and elsewhere, and he will allow them to make their claims against said Smith prior and superior to his in law until they shall have secured or collected enough to pay their claims in full.

"RUMSEY & BUELL.
"M. FORTUNE."

By virtue of various proceedings Rumsey & Buell have collected about $9,000 on his indebtedness. Some time after the above agree-

ment Fortune instituted this suit making Rumsey & Buell as well as Smith defendants. By it he seeks to have the deed corrected so as to describe the opera-house as the property intended, and at the same time have the cloud cast upon the title by Rumsey & Buell's attachment removed. Among other defense Rumsey & Buell plead the above agreement. In order to understand fully the import of that agreement, these facts must be borne in mind: Fortune, as full partner of Smith, was indebted to Rumsey & Buell in the sum of $22,000, or so much thereof at least (the exact amount of which the testimony does not disclose) as had been contracted since the formation of the partnership. He was also indebted to them on the note of $5,000 signed by himself and Smith. He was the agent of Rumsey & Buell, and as such had caused the attachment to be levied on the opera-house, the legal title to which stood in Smith. At the time of doing this he had a lien good in equity upon such opera-house, given to secure him for the money he had put into the partnership.

Now, under these circumstances, by this instrument Rumsey & Buell agree to apply the first moneys collected from Smith's property in payment of said note. They also agree to release Fortune from any partnership liability, while he agrees to allow them to make their claims against Smith prior and superior to his, until they shall have collected enough to pay themselves in full. Now, while the language of this agreement is not clear beyond doubt, it seems to me that fairly construed it means that Fortune is to postpone all claims that he may have against the properties standing in Smith's name, including therein the opera-house, to any claims which Rumsey & Buell may have against said property; in other words, there being two lienholders, the prior lienholder for full consideration grants priority to the junior lienholder. Such is a reasonable construction of the contract, and is such an arrangement as might fairly be expected from parties situated as these were. Under these circumstances I think that complainant is not entitled to relief, and that a decree must be entered dismissing the bill.